UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PS

NOV 17 2020

UNITED STATES DISTRICT COURT
FILED
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

---

SAMUEL R. TOLIVER,

   Plaintiff,

 -v-

STATE OF NEW YORK, GOV. ANDREW
M. CUOMO, ANTHONY ANNUCCI
ACTING COMM., SUPERINTENDENT
OF GOWANDA CORRECTIONAL
FACILITY and DEPUTY OF SECURITY,

   Defendants.

**DECISION AND ORDER**
20-cv-607-A

---

Plaintiff Samuel R. Toliver brought this prisoner's civil rights action *pro se* under 42 U.S.C. § 1983, complaining that his constitutional rights were violated at the Gowanda Correctional Facility ("Gowanda"). Docket Item 1 ("Complaint"). After granting Plaintiff's application to proceed *in forma pauperis*, this Court reviewed the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and dismissed for failure to state a claim, but granted leave to amend the Complaint. Docket Item 10 ("Prior Order"). The Court determined that Plaintiff's "personal injury claim" (Complaint at 4) regarding a fall at Groveland on a wet floor, and his further allegations that his Eighth Amendment right to be free from cruel and unusual punishment was twice violated by the denial of emergency medical transport, did not state a constitutional violation.

Plaintiff has now filed an Amended Complaint (Docket Item 11 "Amended Complaint") and supplemental documentation regarding his medical treatment. Docket Item 13 ("Supplement"). For the reasons discussed below, the Amended Complaint must

be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) for failure to state a claim on which relief may be granted.

## DISCUSSION

Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this Amended Complaint.  Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The Court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

## I.  THE AMENDED COMPLAINT

In evaluating the Amended Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in pro se cases after *Twombly*: "even after *Twombly*, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").  Although "a court is obliged to construe [pro se] pleadings

2

liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted pro se must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

## II. SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of respondeat superior is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). But a supervisory official can be found to be personally involved in an alleged constitutional violation in one of several ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the

3

continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

### III. Plaintiff's Allegations

The allegations of the Amended Complaint, accepted as true for the purposes of this analysis, tell the following story. On March 17, 2020, Plaintiff was cleaning a bathroom at Gowanda as part of his duties as porter when he slipped and fell on a wet and cracked foundation floor. Amended Complaint at 9. He fractured his left ankle, requiring surgery, which was performed at ECMC[1] the following day. *Id.* at 10. Plaintiff was injured at 12:45 in the afternoon, and was not taken to the hospital immediately, arriving some three hours later after a drive of 45 minutes. *Id.* at 14. Plaintiff was transported by wheelchair van rather than by ambulance, and kept shackled while he waited to be taken to the outside hospital. *Id.*

On April 8, 2020, Plaintiff was again admitted to ECMC, after he complained of severe pain, where he was diagnosed with blood clots in both legs and both lungs. *Id.* at 11. Doctors attributed this to "5 months" of inactivity, from March 19, 2020 to July 1, 2020.[2] *Id.* Plaintiff was again transported, shackled, by Gowanda wheelchair van and not by an emergency ambulance, a process which again took several hours rather than 45 minutes. *Id.* at 17. Plaintiff also alleges that Doctor Hague "refuse[s] to reschedule

---

[1] Presumably a reference to the Erie County Medical Center.
[2] The period in question, March 17, 2020 to April 8, 2020, is only three weeks, while March 19 to July 1, 2020 is three and one-half months. It is unclear whether Plaintiff means to allege that his mobility was limited in the period before his accident.

4

check-up of injury of blood clots." *Id.* at 7.[3]  Plaintiff alleges gross negligence and violations of the Eighth and Fourteenth amendments as well as violation of his right to equal protection.

## IV. Analysis

### a. Medical Claims

Plaintiff alleges denial of proper medical care in the failure to rush him to the hospital by ambulance for both the original slip and fall and the resulting blood clots.  A claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that a defendant was deliberately indifferent to a plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). *See also Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992). "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' " *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)).  The Second Circuit pointed out that

> [medical] conditions . . . vary in severity and . . . a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case.  Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, "the failure to provide appropriate treatment might well violate the Eighth Amendment."

*Id.* (quoting *Chance*, 143 F.3d at 702).

---

[3] Plaintiff's supplemental filing, Docket Item 13, indicates that he had a second surgery on his ankle on October 8, 2020.

An isolated failure to provide medical treatment, without more, is generally not actionable unless the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). Further, when the basis for a prisoner's Eighth Amendment claim is a "temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).

Plaintiff has not plausibly alleged that he has suffered any medical consequences due to the failure to transport him more rapidly to ECMC on March 17, 2020 or on April 8, 2020. "It is not sufficient for the plaintiff to allege that he suffered from a medical condition, by itself; rather, he must show that the delay in provision of medical services was objectively serious." *Irizarry v. Dowling*, 3:15CV01400(HBF), 2018 WL 4629187, at *14 (D. Conn. Sept. 27, 2018) (internal quotation marks omitted). Regarding the delays,

[e]ven assuming that plaintiff suffered a hairline fracture to his ankle, he has provided no evidence that the four and one-half hour delay between his arrest and his being seen [] resulted in any worsening of his condition or resulted in the exacerbation of his injury. . . . Numerous cases involving analogous injuries and delays substantially longer than those involved here have held that a deliberate indifference claim does not lie in the absence of a serious medical need resulting from the delay.

*Johnson v. City of New York*, 12 CIV. 8265 LAK HBP, 2014 WL 5393181, at *6 (S.D.N.Y. Oct. 21, 2014), report and recommendation adopted, 12-CV-8265 LAK, 2014 WL 6455162 (S.D.N.Y. Nov. 17, 2014), *aff'd*, 633 F. App'x 37 (2d Cir. 2016) (collecting cases and granting summary judgment).

Further, the facts alleged concerning delay in travel do not suggest a degree of deliberateness, rather than appropriate caution concerning security, or at most

negligence. Indeed, Plaintiff's repeated treatment outside of the prison would appear to support an inference of at least adequate care and concern for his medical condition. Plaintiff alleges only on broad terms that the Defendants were aware of his injury and chose not to rush him to the hospital by ambulance, instead using prison vehicles and keeping Plaintiff shackled while awaiting transport and while being transported. However,

[t]here is nothing at all to suggest the degree of recklessness that elevates what is at most potential medical malpractice to the kind of deliberate indifference that the Eighth Amendment prohibits.

*Williams v N.Y. City Dept. of Corrs.*, 14 CIV. 5082 (BMC), 2016 WL 393438, at \*3 (E.D.N.Y. Jan. 31, 2016). The short delay in securing appropriate treatment does not give rise to an inference of deliberate indifference. *See, e.g., Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994) ("A jury could [] infer deliberate indifference from the delay of over two years between the discovery of the broken pins and the time [defendant] asked that [plaintiff] be re-evaluated for surgery"). Further,

[i]n light of the absence of any indication that more prompt treatment was necessary and the relatively minor delay before the officers brought plaintiff to Bellevue, no reasonable jury could conclude that the police officers delayed providing plaintiff treatment with the subjective recklessness necessary to satisfy the subjective element of a deliberate indifference claim.

*Johnson*, 12 CIV. 8265 LAK HBP, 2014 WL 5393181, at \*9 (collecting cases).

Plaintiff's allegations do not support an inference of deliberate indifference on the part of any Defendant. "[D]efendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere. Thus, even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006). Even if Plaintiff had suffered an adverse consequence from the brief delay in transport to the hospital, there are no

allegations which suggest that Defendants were aware that their conduct posed such risks to Plaintiff.

Finally, Plaintiff alleges in wholly conclusory terms that Doctor Hague refused to schedule a further check-up of his blood clots at the outside hospital despite Plaintiff's asthma, even though it is "this doctor['s] job to return Plaintiff to ECMC for check-ups." Amended Complaint at 7. The Court notes that "'[t]he prisoner's right is to medical care – not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983.'" *Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970) (*quoting Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)); *accord Ross*, 784 F. Supp. at 43-44. Plaintiff sets forth no non-conclusory allegations that his subsequent medical care – being treated at the prison and not returned to ECMC for evaluation - violates the Eighth Amendment. Plaintiff's Eighth Amendment medical claims must therefore be dismissed with prejudice.

### b. Eight Amendment Health and Safety Claims

The Court generously construed the Complaint to allege that the conditions of Plaintiff's confinement violated the Eighth Amendment prohibition of cruel and unusual punishment. The Amended Complaint does not raise such claims formally (see three claims listed in the Amended Complaint at 5-7), however, Plaintiff requests $28,000,000 "due to bad structure of NYS property of Gowanda Correctional Facility." Amended Complaint at 35.

Generally, in order to state a valid conditions of confinement claim, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal

civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)). An Eighth Amendment claim of cruel and unusual punishment thus consists of two components: (1) a subjective component which focuses on the defendant's motive for his conduct; and (2) an objective component which focuses on the conduct's effect. *See Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). The subjective component "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 398 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. County of Orange*, 248 F. App'x 232 (2d Cir. 2007).

Plaintiff has not alleged a constitutional violation because his claim that he slipped on a wet floor does not allege either a sufficiently serious danger to inmates or the requisite mental state on the part of any prison official. To state an Eighth Amendment violation, "the alleged safety issue must expose the inmate to serious damage to future health." *Hawkins v. Nassau Cty. Corr. Fac.*, 781 F. Supp. 2d 107, 113 (E.D.N.Y. 2011) (collecting slip and fall cases).

Further, Plaintiff's allegations do not suggest the deliberate indifference on the part of any Defendant. As in *Hawkins*, "plaintiff's allegations that he fell in the shower area of the jail because of a slippery floor do not state a plausible Section 1983 claim." *Hawkins*, 781 F. Supp. 2d at 114. The Second Circuit has noted that "slip-and-fall claims are seldom viewed as having constitutional dimension." *McCray*, 963 F.3d 110, 115 (2d Cir. 2020). In *McCray*, the Second Circuit affirmed dismissal because Plaintiff "did not make

any claims of exceptional circumstances that would elevate . . . conditions beyond the typical level of danger presented by a slippery sidewalk or a wet floor." *Id.* at 120. Plaintiff's Eighth Amendment claims based on slip and fall allegations must be dismissed for failure to state a claim.

## c. Equal Protection Claim

Plaintiff claims a violation of his right to equal protection. A state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. At its core, equal protection prohibits the government from treating similarly situated persons differently. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Sound Aircraft Servs., Inc. v. Town of East Hampton*, 192 F.3d 329, 335 (2d Cir. 1999); *Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir. 1988). Generalized allegations are insufficient to make out an equal protection claim. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) ("When intent is an element of a constitutional violation ... the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff").

In order to claim that Defendants' conduct violates his equal protection rights, plaintiff must allege that:

(1) . . . compared with others similarly situated, [plaintiff] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992) (citing *Wayte v. United States*, 470 U.S. 598, 608-09 (1985)). Plaintiff's allegations are insufficient because he makes no allegation regarding similarly situated inmates, and sets forth no factual allegation

10

which would support an inference of improper motive. Plaintiff's equal protection claim must therefore be dismissed with prejudice for failure to state a claim on which relief may be granted.

### d. Thirteenth Amendment Claim

Plaintiff alleges a violation of the Thirteenth Amendment because he was required to work in the area where he slipped and suffered his injury, and because he did not volunteer to do so. Amended Complaint at 37. The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII.

Plaintiff relies on *McGarry v. Pallito*, 687 F.3d 505 (2d Cir. 2012). However, *McGarry* deals with requiring pretrial detainees to work in a correctional facility or be subjected to solitary confinement. "[A]lthough a state may subject a pretrial detainee to restrictions and conditions of the detention facility, such conditions may not violate the Constitution. Pretrial detainees are not outside the ambit of the Thirteenth Amendment's involuntary servitude provision." *Id.* at 511 (citation omitted).

However, Plaintiff's reliance on *McGarry* is misplaced. As a sentenced prisoner, the requirement that Plaintiff work does not run afoul of the provisions of the Thirteenth Amendment. "[T]he amendment, on its face, excludes involuntary servitude imposed as legal punishment for a crime . . . even if this Court concluded that Plaintiff was required to work without any compensation while incarcerated, his claim would fail." *Alexander v. Schenk*, 118 F. Supp. 2d 298, 302 (N.D.N.Y. 2000) (internal quotation marks and citations omitted). "Inmates do not have a general constitutional right to refuse to work simply

11

because the work is strenuous or otherwise disagreeable to them." *Bastien v. Samuels*, 14-CV-1561 JFB AKT, 2015 WL 5008837, at *6 (E.D.N.Y. Aug. 21, 2015). Plaintiff's Thirteenth Amendment claim must therefore be dismissed with prejudice for failure to state a claim on which relief may be granted.

## ORDER

IT IS HEREBY ORDERED that the Amended Complaint is dismissed with prejudice for failure to state a claim on which relief may be granted;

FURTHER, the Clerk shall enter Judgment in the action in favor of defendants State of New York, Gov. Andrew M. Cuomo, Anthony Annucci Acting Comm., Superintendent of Gowanda Correctional Facility and Deputy Of Security;

FURTHER, that the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). A request to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**.

RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: November _13_, 2020
Buffalo, NY

12